UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| HealthPartners, Inc. et al., <br><br> Plaintiffs, <br><br> v. <br><br> American Guarantee and Liability Insurance Company, <br><br> Defendant. | Case No. 21-cv-1375 (SRN/ECW) <br><br><br> **ORDER** |

Rick E. Kubler and Amy E. Erickson, Lathrop GPM LLP, 80 South 8th Street, Suite 500, IDS Center, Minneapolis, MN 55402; and Noah H. Nash, Lathrop GPM LLP, 2345 Grand Boulevard, Suite 2200, Kansas City, MO 64108, for Plaintiffs.

Daniel J. Millea and Akira C. Perez, Zelle LLP, 500 Washington Avenue South, Suite 4000, Minneapolis, MN 55415; Eileen K. Bower, Clyde & Co LLP, 55 West Monroe Street, Suite 3000, Chicago, IL 60603; and Timothy A. Carroll, Clyde & Co LLP, 200 Campus Drive, Suite 300, Florham Park, NJ 07932, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Motion to Dismiss [Doc. No. 41] filed by Defendant American Guarantee and Liability Insurance Company ("AGLIC"). Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court **GRANTS** the motion.

**I.  BACKGROUND**

    **A.  The Parties**

Plaintiffs HealthPartners, Inc., Amery Regional Medical Center, Inc., Capitol View Transitional Care Center, Dental Specialties, Inc., Group Health Plan, Inc., HealthPartners

1

Associates, Inc., HealthPartners Central Minnesota Clinics, Inc., HealthPartners RC, HealthPartners Services, Inc., Hudson Hospital, Inc., Hutchinson Health, Lakeview Memorial Hospital Association, Inc., Park Nicollet Clinic, Park Nicollet Healthcare Products, Park Nicollett Health Services, Park Nicollet Methodist Hospital, Physicians Neck & Back Clinics, Regions Hospital, RHSC, Inc., Stillwater Medical Group, TRIA Orthopaedic Center, LLC, and Westfields Hospital Inc. (together, "Plaintiffs" or "HealthPartners") are Minnesota and Wisconsin for-profit, non-profit, and limited liability companies. (Compl. ¶¶ 28–49.)

Defendant AGLIC is a New York corporation with its principal place of business in Schaumburg, Illinois, and is a wholly owned subsidiary of Zurich American Insurance Company, which is also a New York corporation. (*Id.* ¶ 50.)

### B. Factual Background

#### 1. HealthPartners' Business

Founded in 1957, HealthPartners is the largest consumer-governed non-profit health care organization in the United States. (Compl. ¶ 2.) It is comprised of more than 90 clinics and hospitals in Minnesota and western Wisconsin and "includes a multi-specialty group practice of more than 1,800 physicians and 60 dentists." (*Id.* ¶ 3.) It also has more than 26,000 employees, who provide care to more than 1.2 million patients. (*Id.*)

#### 2. The Policy

AGLIC issued a Zurich EDGE Healthcare Policy to HealthPartners, for the policy period February 1, 2020 through April 1, 2021. (*Id.* ¶ 51, Ex. 1 (the "Policy") at 15.)

Plaintiff HealthPartners, Inc. is the "First Named Insured" on the Policy, while the other Plaintiffs are "Insureds." (*Id.* ¶¶ 52–53; *see also id.* Ex. 2.)

### a. General Coverage

The Policy generally insures against "direct physical loss of or damage caused by a **Covered Cause of Loss** to Covered Property." (Policy § 1.01 (emphasis in original).) A "Covered Cause of Loss" is defined as "[a]ll risks of direct physical loss of or damage from any cause unless excluded." (*Id.* § 7.11.) The Policy includes Time Element coverage (i.e., business interruption coverage), provided as follows:

> The Company will pay for the actual Time Element loss the Insured sustains, as provided in the Time Element Coverages, during the Period of Liability. The Time Element loss must result from the necessary **Suspension** of the Insured's business activities at an Insured Location. The **Suspension** must be due to direct physical loss of or damage to Property (of the type insurable under this Policy other than **Finished Stock**) caused by a **Covered Cause of Loss** at the **Location**, or as provided in Off Premises Storage for Property Under Construction Coverages.

(*Id.* § 4.01.01 (emphasis in original).) The Policy also insures the "reasonable and necessary Extra Expenses incurred . . . to resume and continue as nearly as practicable the Insured's normal business activities." (*Id.* § 4.02.03.) The phrase "direct physical loss of or damage to" is not defined by the Policy.

The Policy further provides civil authority coverage. Specifically, the Policy covers Time Element loss "resulting from the necessary **Suspension** of the Insured's business activities . . . if the **Suspension** is caused by order of civil or military authority that prohibits access to the **Location**." (*Id.* § 5.02.03.) To apply, there must be "direct physical loss of or damage" to nearby property that is not owned by HealthPartners. (*Id.*)

3

### b.     Special Coverage

The Policy provides special coverage for certain losses resulting from an Interruption by Communicable Disease ("ICD"). (*Id.* § 5.02.35.) Unlike the Policy's general coverage, the ICD coverage does not require "direct physical loss of or damage to" covered property. Instead, ICD coverage applies as follows:

> The Company will pay for the actual Gross Earnings loss sustained by the Insured, as provided by this Policy, resulting from the necessary **Suspension** of the Insured's business activities at an Insured Location if the **Suspension** is caused by order of an authorized governmental agency enforcing any law or ordinance regulating communicable diseases and that such portions of the location are declared uninhabitable due to the threat of the spread of communicable disease, prohibiting access to those portions of the **Location**.

(*Id.*) This coverage extends to "the reasonable and necessary cost incurred for the cleanup, removal and disposal of the actual not suspected presence of substance(s) causing the spread of such communicable disease." (*Id.*) It does not cover "loss or damage that is payable under any other provision" in the Policy. (*Id.*)

### 3.     The Pandemic

In December 2019, a novel coronavirus, SARS-CoV-2, known as COVID-19, began to infect individuals throughout the world. (Compl. ¶ 4.) By January 2020, the United States reported its first cases of the virus. (*Id.* ¶ 5.) On February 5, 2020, the first positive case was announced in Wisconsin, and about one month later, Minnesota announced its first positive COVID-19 case. (*Id.*) In response to the unprecedented and mushrooming COVID-19 outbreaks across the nation, the governors of Minnesota and Wisconsin issued emergency executive orders ("Government Orders"). (*Id.* ¶¶ 125–31.)

4

### a. Government Orders

On March 12, 2020, Minnesota Governor Walz declared a peacetime emergency in response to the spread of COVID-19 and issued several emergency executive orders. (Compl. ¶¶ 126–28; *see also* Declaration of Akira Céspedes Pérez [Doc. No. 44-1] ("Céspedes Decl.") Ex. 1 at 2–35.) Emergency Executive Order 20-09 ordered that, beginning on March 23, 2020, "all non-essential or elective surgeries and procedures, including non-emergent or elective dental care, that utilize PPE or ventilators must be postponed indefinitely." (Céspedes Decl. Ex. 1 at 2; Compl. ¶ 127.) This order was effective until May 10, 2020. (Céspedes Decl. Ex. 1 at 6; Compl. ¶ 128.)

Similarly, on March 24, 2020, Wisconsin Governor Evers issued Emergency Executive Order 12, called the "Safer at Home Order." (Céspedes Decl. Ex. 1 at 36–51; Compl. ¶ 130.) Although the order encouraged individuals to stay at home, it did permit them to "leave their residence to work for or obtain services at any Healthcare and Public Health Operations," which included "hospitals," "medical facilities," and "clinics." (*Id.* at 40.) It also provided that "Healthcare and Public Health Operations shall be broadly construed to avoid any impediments to the delivery of healthcare, broadly defined." (*Id.* at 41.) However, it did not include "fitness and exercise gyms." (*Id.*) This order remained effective until May 26, 2020. (Compl. ¶ 130.) In addition, the Wisconsin Department of Health Services "recommended that dental practices postpone all elective and non-urgent care treatment." (*Id.* ¶ 132.)

### b. Impact on HealthPartners

HealthPartners alleges that the Government Orders (1) "forced [it] to suspend its elective, non-essential medical and dental services at all locations throughout Minnesota and Wisconsin," (2) "required HealthPartners to close specific properties," and (3) even after those properties re-opened, HealthPartners "continued to limit operations and require extensive ongoing and repeated remediation." (*Id.* ¶¶ 135, 142–43.) HealthPartners further asserts that the remediation and limitations on operations have resulted in "losses to date in excess of $430 million." (*Id.* ¶ 144.)

Despite those limitations, HealthPartners also alleges that it "has remained—and continues to remain—fervent to its commitment to providing safe and innovative medical treatment to patients in Minnesota and Wisconsin." (*Id.* ¶ 14.) Given this commitment, HealthPartners has "provided medical and dental care to tens of thousands of patients" since late-March 2020. (*Id.* ¶ 137.) And it has done so even though "over 51,000 patients within HealthPartners' care system had confirmed COVID-19 diagnoses" and "at least 2,240 employees tested positive for COVID-19." (*Id.* ¶¶ 137–38.)

### 4. HealthPartners Submits an Insurance Claim

On May 7, 2020, AGLIC received HealthPartners' insurance claim seeking reimbursement for losses due to COVID-19 and the Government Orders. (*See id.* ¶¶ 147–48.) After reviewing the claim, AGLIC paid HealthPartners $45,726 for losses sustained

at three fitness centers[1] that were required to close under the Government Orders. (*See id.* ¶¶ 153–54.) But it denied HealthPartners' claim relating to any other alleged losses. (*Id.*)

### C. Procedural Background

On June 10, 2021, HealthPartners filed the Complaint, alleging claims for breach of contract and breach of the covenant of good faith and fair dealing, and seeking declaratory and monetary relief. (*Id.* ¶¶ 158–75.) In response, AGLIC filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that (1) HealthPartners failed to plead sufficient facts alleging "direct physical loss of or damage to" covered property, (2) various exclusions preclude coverage, and (3) absent three fitness centers on which it paid claims, the Government Orders did not prevent access to HealthPartners' physical locations. (*See generally* Def.'s Mem [Doc. No. 43].)

## II. DISCUSSION

### A. Legal Standard

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts the facts alleged in the complaint as true and views those allegations in the light most favorable to the plaintiff. *Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013). However, the Court need not accept as true wholly conclusory allegations or legal conclusions couched as factual allegations. *Id.* In addition, the Court ordinarily does not consider matters outside the pleadings on a motion to dismiss. *See* Fed. R. Civ. P. 12(d).

---

[1] For purposes of analyzing whether the Government Orders constitute "direct physical loss of or damage to" covered property, the Court does not hereinafter consider the closing of HealthPartners' gyms and fitness centers because AGLIC has found that coverage applied to those claims and has paid them. (Compl. ¶ 154.)

Matters outside the pleadings include "any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings," as well as statements of counsel at oral argument that raise new facts not alleged in the pleadings. *Hamm v. Rhone-Poulenc Rorer Pharm., Inc.*, 187 F.3d 941, 948 (8th Cir. 1999) (internal quotation marks and citation omitted). The Court may, however, "consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record."[2] *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must allege facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

---

[2] For purposes of this motion, the Court has considered the Complaint and its attachments, along with the Government Orders referenced in the Complaint, *see W. Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Cos.*, 498 F. Supp. 3d 1233, 1237 (C.D. Cal. 2020) (taking judicial notice of an executive order because it is a matter of public record).

**B.** **Analysis**

　　**1.** **The Law**

In Minnesota, the interpretation of an insurance policy is a question of law.[3] *Jenoff, Inc. v. New Hampshire Ins. Co.*, 558 N.W.2d 260, 262 (Minn. 1997). The Court compares "the allegations in the complaint . . . with the relevant language in the insurance policy." *Meadowbrook, Inc. v. Tower Ins. Co.*, 559 N.W.2d 411, 415 (Minn. 1997) (emphases omitted). Before analyzing whether an exclusion applies, "the insured bears the initial burden of demonstrating coverage." *Travelers Indem. Co. v. Bloomington Steel & Supply Co.*, 718 N.W.2d 888, 894 (Minn. 2006).

　　**2.** **Coverage**

　　　　**a.** **Time Element Coverage**

Under the Policy, AGLIC agreed to pay for Time Element loss when HealthPartners' business activities suffered a "suspension" because of a "direct physical loss of or damage to" covered property. (Policy § 4.01.01.) The Eighth Circuit has explained that a policy covering "direct physical loss of or damage to property" does not cover "mere loss of use or function." *Pentair, Inc. v. Am. Guarantee & Liab. Ins. Co.*, 400 F.3d 613, 614, 616 (8th Cir. 2005). Recently, the Eighth Circuit reaffirmed that "there must be some physicality to the loss or damage of property—*e.g.*, a physical alteration, physical contamination, or physical destruction," to recover under similar policy language (i.e., "accidental physical loss or accidental physical damage"). *Oral Surgeons, P.C. v.*

---

[3] The parties agree that Minnesota law governs this dispute. (*See* Def.'s Mem. at 9 n.4; Pl.'s Opp'n [Doc. No. 52] at 45.)

9

*Cincinnati Ins. Co.*, 2 F.4th 1141, 1143–44 (8th Cir. 2021).  Although *Oral Surgeons* was decided under Iowa law, the Eighth Circuit held that Iowa and Minnesota law were not "materially distinguishable." *Id.* at 1445.

Here, HealthPartners has alleged that it suspended its business activities (1) due to the Government Orders, and (2) due to the presence of COVID-19 on its premises.  Accordingly, the Court considers whether either constitutes "direct physical loss of or damage to" covered property.

### (i)     Government Orders

AGLIC contends that the Government Orders do not constitute "direct physical loss of or damage to" the covered properties, asserting that the Eighth Circuit has already decided this issue in *Oral Surgeons, P.C. v. Cincinnati Insurance Company*, 2 F.4th 1141 (8th Cir. 2021).  (Def.'s Mem. at 13–17.)  In *Oral Surgeons*, the Eighth Circuit addressed whether government restrictions issued in response to the COVID-19 pandemic constituted "physical loss" under an insurance policy.  2 F.4th at 1143–44.  The court reaffirmed that "loss of use" caused by government restrictions was not a "physical loss." *Id.* at 1145.

Here, HealthPartners alleges that, "[a]s a result of the Government Orders, HealthPartners was forced to suspend its elective, non-essential medical and dental services at all locations throughout Minnesota and Wisconsin." (Compl. ¶ 135.)  At the same time, however, HealthPartners alleges that it "provided medical and dental care to tens of thousands of patients." (*Id.* ¶ 137; *see also* Pl.'s Opp'n at 24 ("While HealthPartners' gyms and fitness centers were forced to close entirely, the fact that healthcare facilities and hospitals were deemed 'essential business' and remained at least partially open, albeit with

10

severe restrictions, is in no way indicative that the air was safe, or HealthPartners' property was usable for its intended purpose.") Taken together, HealthPartners has alleged that the Government Orders placed restrictions on how HealthPartners could use its property but did not shutter them. (*See* Compl. ¶¶ 137, 145.)

Like in *Oral Surgeons*, HealthPartners makes a loss-of-use argument, which the Eighth Circuit has repeatedly held does not constitute "physical loss" under Minnesota law. *See Pentair*, 400 F.3d at 614, 616 (concluding that "direct physical loss of or damage to property" is not established "whenever property cannot be used for its intended purpose" (emphasis omitted)); *see also Source Food Tech., Inc. v. U.S. Fid. & Guar. Co.*, 465 F.3d 834, 838 (8th Cir. 2006) (affirming that a government ordered embargo prohibiting the transport of plaintiff's meat was not a "direct physical loss to property"). Accordingly, the Court finds that the Government Orders do not constitute "direct physical loss of or damage to" covered property.

Other sections of the Policy confirm this conclusion. For example, the Policy provides that Time Element loss will be covered during the "Period of Liability," as outlined below:

> The period starting from the time of physical loss or damage of the type insured against and ending when with due diligence and dispatch the building and equipment could be repaired or replaced, and made ready for operations under the same or equivalent physical and operating conditions that existed prior to the damage.

(Policy § 4.03.01.01.) This policy language confirms that the physical loss or damage must be such that it can be "repaired or replaced." *See Ark Restaurants Corp. v. Zurich Am. Ins. Co.*, No. 2021 CH 1240, at *1–2, 4 (Ill. Cir. Ct. Aug. 18, 2021) (analyzing the same policy

11

language and finding that "[t]his definition reinforces the notion that direct physical loss or damage contemplates more than mere loss of use"). As noted in *Oral Surgeons*, "[t]hat the policy provides coverage until property 'should be repaired, rebuilt or replaced' or until business resumes elsewhere assumes physical alteration of the property, not mere loss of use." 2 F.4th at 1144. So too here. That the Policy provides Time Element coverage until the property can be "repaired or replaced" assumes that a physical alteration of the property is required.

In an effort to avoid dismissal, HealthPartners argues that *Oral Surgeons* is distinguishable for two reasons. (Pl.'s Opp'n at 22.) First, HealthPartners contends that the Court in *Oral Surgeons* analyzed different policy language. (*Id.*) Specifically, HealthPartners notes that *Oral Surgeons* analyzed "direct loss[4] to" property, while this Policy provides coverage for "direct physical loss of or damage to" property. (*Id.* at 21–22.) HealthPartners contends that the use of the preposition "of" after the word "loss" in this Policy makes this case distinguishable from *Oral Surgeons*, citing *Seifert v. IMT Insurance Company*, 542 F. Supp. 3d 874 (D. Minn. 2021).

The Court disagrees. *Seifert* merely stands for the proposition that "direct physical loss of" property is plausibly alleged when the plaintiff alleges that government orders closed his business. In this case, however, HealthPartners has not plausibly alleged the closure of its facilities. Instead, it alleges a loss of use of its facilities. Moreover, the

---

[4] The policy in *Oral Surgeons* defined "loss" as "accidental physical loss or accidental physical damage." 1 F.4th at 1143.

Eighth Circuit in *Oral Surgeons* focused on the meaning of the phrase "physical loss"—which is the language at-issue in this case—and, in doing so, relied on cases applying Minnesota law. As mentioned above, one of those cases—*Pentair*, 400 F.3d 613—involved the exact same policy language at issue in this case (i.e., "direct physical loss of or damage to"). Accordingly, the holding in *Oral Surgeons* is binding—a loss of use or function due to government orders issued in response to COVID-19 is not a "physical loss."

Second, HealthPartners contends that the facts are different in this case. Specifically, it cites *Life Time, Inc. et al., v. Zurich American Insurance Company*, Civ. No. 27-cv-20-10599 (Henn. Cnty. Dist. Ct. Oct. 7, 2021) (hereinafter, "*Life Time*"), in supports of its contention that it has adequately plead that it is entitled to Time Element coverage because it has alleged the actual presence of COVID-19 in its facilities as well as the impact of the Government Orders. But *Life Time* does not support HealthPartners' contention. There, the Hennepin County District Court denied a motion to dismiss, explaining that "pleading contamination and closure because of contamination" is enough to survive dismissal. *Life Time*, slip op. at 10. Here, however, unlike in *Life Time*, HealthPartners has not plausibly alleged a "closure," but rather, a restriction on use, which is why *Oral Surgeons* governs this dispute.

### (ii) Contamination

Next, the Court must determine whether HealthPartners has adequately plead "direct physical loss of or damage to" covered property by means of contamination. AGLIC argues that the presence of COVID-19 does not establish a "direct physical loss of or damage to" covered property because it did not render the property useless. (Def.'s Mem.

13

at 12, 19–24.)  Like its argument relating to the Government Orders, AGLIC highlights that HealthPartners continued to treat patients, including ones infected with COVID-19, undermining any argument that the virus caused "direct physical loss of or damage to" HealthPartners' facilities.

HealthPartners, in turn, argues that contamination does constitute physical loss or damage, citing *General Mills, Inc. v. Gold Medal Insurance Company*, 622 N.W.2d 147 (Minn. Ct. App. 2001).  (*See* Pl.'s Opp'n at 19.)  However, *General Mills* involved an actual change to the covered property.  Specifically, the plaintiff's grain was sprayed with a pesticide that was not approved by the FDA, rendering the grain illegal "adulterated products."  *General Mills*, 622 N.W.2d at 150, 152.  Put differently, plaintiff had one product before and a different product after the pesticide was applied.  Accordingly, the Minnesota Court of Appeals affirmed that the contamination did constitute direct physical loss under the policy.  *Id.* at 155.

Here, HealthPartners has alleged the actual presence of COVID-19 in its facilities. Unlike in *General Mills*, however, HealthPartners has not plausibly alleged that something about its covered property has fundamentally changed in a way that cannot be undone.  *See Bachman's Inc. v. Florists' Mut. Ins. Co.*, 525 F. Supp. 3d 984, 988–89 (D. Minn. 2021) (explaining that COVID-19 most likely cannot contaminate premises because it "can be easily eliminated with routine cleaning procedures").  Moreover, COVID-19 is a threat to persons, not "the inanimate structures covered by property insurance policies." *Uncork & Create LLC v. Cincinnati Ins. Co.*, 498 F. Supp. 3d 878, 883 (S.D.W. Va. 2020).

14

HealthPartners asserts that the surfaces and the air in its facilities have changed due to the virus, which is why it must repeatedly clean and disinfect its facilities, citing *Sentinel Mgmt. Co. v. New Hampshire Ins. Co.*, 563 N.W.2d 296 (Minn. Ct. App. 1997) (involving asbestos contamination). But the presence of COVID-19 does not render the property useless like asbestos contamination. *See Sentinel*, 563 N.W.2d at 300 ("Although asbestos contamination does not result in tangible injury to the physical structure of a building, a building's function may be seriously impaired or destroyed and the property *rendered useless* by the presence of contaminants." (emphasis added)). Rather, as HealthPartners concedes, despite the alleged presence of COVID-19, its facilities continued to administer care to "tens of thousands of patients." Accordingly, HealthPartners has not plausibly plead that the presence of COVID-19 is a "direct physical loss of or damage to" covered property under the Policy. *See The Shakopee Mdewakanton Sioux Community v. Factory Mut. Ins. Co.*, No. 70-cv-21-6480, at *7 (Scott Cnty. Dist. Ct. Dec. 29, 2021) ("The Court is not persuaded . . . that respiratory droplets of a COVID-19 infected person land on and alter surfaces . . . to the extent that the property is physically touched or injured.").

Similarly, HealthPartners contends that COVID-19 contaminated its facilities because, in response to the virus, it "had to physically modify its property to prevent further loss by . . . reconfiguring indoor spaces, and providing PPE to patients and staff." (Pl.'s Opp'n at 26; *see also* Compl. ¶ 13.). But those actions are not the same as asbestos abatement or the destruction of pesticide-contaminated food product; instead, they are alterations to existing physical property, and alterations do not constitute direct physical loss of or damage to property. *See, e.g.*, *Shakopee Mdewakanton Sioux Community*, No.

15

70-cv-21-6480, at *11 ([U]nlike the physical loss or damage that may be caused by an earthquake, hurricane, or fire, the alleged presence of COVID-19 can be eliminated by routine disinfection."); *Byberry Servs. & Sols., LLC v. Mt. Hawley Ins. Co.*, Civ. No. 20-cv-03379, 2021 WL 3033612, at *4 (N.D. Ill. July 19, 2021) ("[W]hile the plaintiffs did physically alter their property in response to the orders—installing plexiglass among other changes—such measures do not qualify as a physical loss."); *Berkseth-Rojas v. Aspen Am. Ins. Co.*, Civ. No. 3:20-CV-0948-D, 2021 WL 2936033, at *6 (N.D. Tex. July 13, 2021) (rejecting the argument that being "forced to reduce [] patient capacity and institute remedial measures to prevent the spread of COVID-19 among humans" constitutes physical loss or damage).

For these reasons, the Court finds that HealthPartners has not plausibly plead that the presence of COVID-19 and the related Government Orders constitutes "direct physical loss of or damage to" covered property under the Policy.[5]

---

[5] Courts in other jurisdictions have reached the same result when analyzing the same policy language (i.e., "direct physical loss of or damage to"). *See, e.g., Valley Health System Inc. v. Zurich Am. Ins. Co.*, Civ. No. BER-L-1907-21, 2021 WL 4958349, at *3–7, 10 (N.J.Super.L. Oct. 18, 2021) (granting motion to dismiss under New Jersey law); *GPIF Crescent Court Hotel LLC et al. v. Zurich Am. Ins. Co.*, No. 20 CH 5564 (Ill. Cir. Ct. Sept. 10, 2021) (finding no coverage under Illinois law, and granting defendant's motion to dismiss); *United States of Aritzia, Inc. v. Zurich Am. Ins. Co.*, No. 21 CH 1231 (Ill. Cir. Ct. Nov. 10, 2021) (granting defendant's motion for judgment on the pleadings under Illinois law); *Carilion Clinic v. Am. Guarantee & Liab. Ins. Co.*, No. 7:21-CV-00168, 2022 WL 347617, at *4–14 (W.D. Va. Feb. 4, 2022) (granting motion to dismiss plaintiff's claims for property damage and time element coverage under Virginia law); *Lindenwood Female College v. Zurich Am. Ins. Co.*, No. 4:20CV1503 HEA (E.D. Mo. Nov. 1, 2021) (granting motion to dismiss under Missouri law); *contra Novant Health Inc. v. Am. Guarantee & Liab. Ins. Co.*, No. 1:21-CV-309, 2021 WL 4340006, at *2–3 (M.D.N.C. Sept. 23, 2021)

### b. Civil Authority Coverage

HealthPartners also asserts a claim under civil authority coverage. The Policy provides civil authority coverage as follows:

> The Company will pay for the actual Time Element loss sustained by the Insured . . . resulting from the necessary **Suspension** of the Insured's business activities at an Insured Location if the **Suspension** is caused by order of civil or military authority that prohibits access to the **Location**. That order must result from a civil authority's response to direct physical loss of or damage caused by a **Covered Cause of Loss** to property not owned, occupied, leased or rented by the Insured . . . and located within the distance of the Insured's Location as stated in the Declarations . . . .

(Policy § 5.02.03.) Here, HealthPartners has not alleged that there was a physical loss of or damage to another's property located nearby its facilities. *See Olmsted Med. Ctr. v. Cont'l Cas. Co.*, Civ. No. 21-1309 (MJD/BRT), 2022 WL 126336, at *9 (D. Minn. Jan. 13, 2022) (granting motion to dismiss on claim for civil authority coverage for failing to allege physical loss to a nearby property); *see also Sandy Point Dental, PC v. Cincinnati Ins. Co.*, 488 F. Supp. 3d 690, 694 (N.D. Ill. 2020), *recons. denied*, No. 20 CV 2160, 2021 WL 83758 (N.D. Ill. Jan. 10, 2021), *and aff'd sub nom.*, 20 F.4th 327 (7th Cir. 2021) ("Just as the coronavirus did not cause direct physical loss to plaintiff's property, the complaint has not (and likely could not) allege that the coronavirus caused direct physical loss to other property."). Moreover, as explained below, the Government Orders never "prohibited" anyone access to HealthPartners' facilities. *See AECOM v. Zurich Am. Ins. Co.*, No. LA CV21-00237 JAK (MRWx), at *9 (C.D. Cal Dec. 1, 2021) ("The civil authority orders

---

(noting a lack of binding authority and thus finding plaintiff had plausibly plead contamination due to COVID-19 to survive dismissal under North Carolina law).

17

temporarily restricted Plaintiff's use of its facilities, but they did not physically alter Plaintiff's property or permanently take property from Plaintiff."); *see also Valley Health System*, 2021 WL 4958349, at *7 (granting motion to dismiss because the stay-at-home orders "were not issued in response to any specific physical loss or damage to any identifiable property"). Therefore, HealthPartners' has not plausibly plead a claim for civil authority coverage under the Policy.[6]

### c. Interruption by Communicable Disease ("ICD") Coverage

HealthPartners alleges that the Government Orders triggered ICD coverage. (Compl. ¶ 145.) The Court disagrees.

The Policy provides ICD coverage for suspensions that arise in HealthPartners' business activities due to "an authorized governmental agency enforcing any law or ordinance regulating communicable disease and that such portions of the location are declared uninhabitable due to the threat of the spread of communicable disease, prohibiting access to those portions of the location." (Policy § 5.02.35 (emphasis omitted).)

In this case, none of the Government Orders shuttered HealthPartners facilities. For example, on March 12, 2020, Minnesota Governor Walz issued Emergency Executive Order 20-09, requiring that "all non-essential or elective surgeries and procedures, including non-emergent elective care, that utilize PPE or ventilators must be postponed

---

[6] Because the Court finds that there is no insurance coverage, it need not address Defendant's alternative policy exclusion arguments, including analyzing the parties' supplemental authority relating to the policy exclusions. *See, e.g.*, *Dana Inc. v. Zurich Am. Ins. Co.*, No. 3:21 CV 758 (N.D. Ohio Nov. 2, 2021); *Novant Health*, 2021 WL 4340006, at *3–5.

indefinitely." (Céspedes Decl. Ex. 1 at 3; Compl. ¶ 127.) Then, on May 10, 2020, Governor Walz lifted that restriction, only requiring healthcare facilities to develop a plan to prioritize procedures going forward. (Céspedes Decl. Ex 1 at 7; Compl. ¶ 128.)

Likewise, on March 24, 2020, Wisconsin Governor Evers issued Emergency Executive Order 12, which was a stay-at-home order. (Compl. ¶ 130; Céspedes Decl. Ex 1 at 36–51.) Although the order required most individuals to stay home, it explicitly permitted individuals to "leave their residence to work for or obtain services at any Healthcare and Public Health Operations," including "hospitals," "medical facilities," and "clinics." (Céspedes Decl. Ex 1 at 40.) It also provided that "Healthcare and Public Health Operations shall be broadly construed to avoid any impediments to the delivery of healthcare, broadly defined." (*Id.* at 41.) In addition, the Wisconsin Department of Health Services "recommended that dental practices postpone all elective and non-urgent care treatment." (Compl. ¶ 132.)

Nothing in the Government Orders suggests that any HealthPartners location was declared uninhabitable. Minnesota simply restricted operations by prohibiting non-essential and elective surgeries and procedures. And Wisconsin exempted healthcare facilities—like HealthPartners' locations—from the stay-at-home order. Moreover, the recommendation of the Wisconsin Department of Health Services is exactly that—a recommendation. Accordingly, the Court finds that HealthPartners has not plausibly plead events that trigger ICD coverage under the Policy. *See Northwell Health, Inc. v. Lexington Ins. Co.*, No. 21-cv-1104 (JSR), 2021 WL 3139991, at *5 (S.D.N.Y. July 26, 2021) (granting dismissal because plaintiff did "not plausibly allege that state and local orders

19

regulating the spread of COVID-19 declared uninhabitable and prohibited access to Northwell facilities.").[7]

### III. CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that the Motion to Dismiss [Doc. No. 41] filed by Defendant American Guarantee and Liability Insurance Company is **GRANTED** and the Complaint is **DISMISSED** with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: February 28, 2022

s/ Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge

---

[7] Because the Court finds no coverage under the Policy, HealthPartners' claim for breach of the covenant of good faith and fair dealing fails. Therefore, the Court grants Defendant's dismissal of Count III as well.